IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENNETH MILLER, et al.,          )
          Plaintiffs,            )
                                 )
          v.                     )     Civil Action No. 02-0686
                                 )
CITY OF PITTSBURGH,              )
          Defendant.             )


### FINDINGS AND ORDER

Gary L. Lancaster                        April 3, 2007
District Judge.

        This is an action under 42 U.S.C.A. § 1983 alleging

violation of plaintiffs' First and Fourth Amendment rights.

Plaintiffs allege that there is a policy or custom in the City of

Pittsburgh Police Department of arresting and harassing people who

leaflet on public sidewalks.[1]  Specifically, plaintiffs contend

that they were prevented from leafleting outside PNC Park on March

2, 2002, in connection with their protest against the sale of

merchandise made in "sweatshops."  In addition, plaintiffs contend

that when they entered PNC Park, they were falsely arrested.

Defendant denies that the City has a policy or custom of violating

--------------------------------

        [1] We note that in their complaint, plaintiffs alleged
that the City had a policy or custom of restricting First
Amendment rights solely at the request of a influential or
politically well-connected private party.  At trial, plaintiffs
abandoned this theory in favor of the one set forth above.

the First Amendment rights of its citizens. Defendant also contends that the officers had probable cause to arrest plaintiffs inside PNC Park.

The Court held a bench trial on March 19 and 20, 2007. Counsel appeared on behalf of both parties and presented documentary and testimonial evidence. The Court has considered all of the evidence submitted and the arguments of the parties and now makes its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. On the basis of these findings, judgment will be entered in favor of defendant on all counts.

I.      FINDINGS OF FACT

The Court finds the following facts by a preponderance of the evidence.

1.      PNC Park is the baseball stadium located on the North Shore of Pittsburgh, Pennsylvania. The Pittsburgh Pirates play their home baseball games there.

2.      PNC Park is bordered by Federal Street, General Robinson Street, Bill Mazeroski Way, and the Allegheny River. Between the three streets and the stadium there are paved areas referred to in this case as the sidewalks outside

2

of PNC Park.  These sidewalks include an area under a canopy attached to the stadium, as well as an open-air walkway.

3.      PNC Park, including the property outside the stadium running to the curbs of the three public roadways surrounding the stadium, is owned by the Sports and Exhibition Authority, a public body.  The SEA leases this property to the Pittsburgh Pirates, a private entity.

4.      There was a conflict, as well as a deficiency, in the evidence as to whether the sidewalks surrounding PNC Park are public or private for First Amendment purposes.  However, we need not resolve this conflict, because even if we find that the sidewalks are public forums, plaintiffs cannot satisfy all elements of their section 1983 claim.  Therefore, we will assume for the purposes of this opinion only that all sidewalks outside of PNC Park are public forums for First Amendment purposes.

5.      Plaintiffs Kenneth Miller, Joel Woller, Kevin Mayle, and Michele Gaffey were outside PNC Park on March 2, 2002 in order to pass out leaflets and obtain signatures in furtherance of their anti-sweatshops campaign.

6.      Plaintiffs were part of a group of approximately a dozen individuals, who split into groups of 2 or 3 people and

3

moved along all four sides of PNC Park to leaflet and collect signatures that day

7.       At times, plaintiffs approached Pirates' fans waiting in line to buy tickets or to get a tour of the new stadium to pass out their literature and obtain signatures.

8.       Pittsburgh police officers were working at PNC Park on private duty detail on March 2, 2002. The officers wore Pittsburgh Police Department uniforms and retained all powers possessed by an on-duty police officer. They acted under color of state law while working private duty detail at PNC Park that day.

9.       Pittsburgh Pirates' security officials and uniformed City of Pittsburgh police officers told plaintiffs, and other members of their group, that they could not leaflet on the Pirates' private property, which included the sidewalks surrounding PNC Park, and the Park itself.

10.      Following that instruction, some members of plaintiffs' group went across Federal Street or General Robinson Street, or onto the Roberto Clemente Bridge, to continue leafleting.

11.      At a pre-determined time, the group met at the Roberto Clemente statue outside PNC Park, took a picture, and dispersed.

4

12.     The four plaintiffs then decided to go inside PNC Park,
        in particular to the Pirates' merchandise store.

13.     Plaintiffs all acknowledged that they were not permitted
        to distribute leaflets inside PNC Park.

14.     While inside the merchandise store, plaintiff Miller
        handed a leaflet to a store employee and asked her to
        sign his petition.

15.     At some point during plaintiffs' visit to the merchandise
        store, which lasted more than a half hour, Pittsburgh
        Pirates' security notified the Pittsburgh police officers
        on private duty detail that plaintiffs were leafleting
        inside PNC Park, after being warned not to do so.

16.     Pirates' security detained three members of the group in,
        or near, the merchandise store and directed the
        Pittsburgh police officers to arrest them.   The fourth
        plaintiff, Woller, was arrested outside the store after
        being instructed by the arresting officers to back away,
        and admitting to being with the group.  All were charged
        with defiant trespass.

17.     All four plaintiffs were taken to the Pirates' security
        office and then to the Allegheny County Jail, where they
        were held for several hours.

18.     The criminal charges were dropped pursuant to a consent
        decree that the plaintiffs reached with the SEA regarding
        guidelines that would be applied in the future to First
        Amendment activities on the sidewalks surrounding PNC
        Park.

19.     There is a similar consent decree in place regarding
        Mellon Arena.

20.     On July 11, 2006, the day of the All-Star Game, plaintiff
        Miller again went to PNC Park to distribute anti-
        sweatshop literature.

21.     Prior to his All-Star Game activity, plaintiff Miller met
        with Mona Wallace, a Sergeant with the City of Pittsburgh
        Police Department.   Sgt. Wallace informed plaintiff
        Miller that the Pittsburgh Police would allow his group
        to leaflet on the sidewalks outside of PNC Park in
        accordance with the terms of the consent decree.

22.     When plaintiff Miller's group arrived at PNC Park, a
        Pittsburgh police officer told them that they could not
        leaflet on the sidewalks outside of PNC Park.

23.     Shortly after giving that instruction, the same police
        officer told plaintiff Miller's group that they could
        leaflet on the sidewalks outside of PNC Park.

24.     Plaintiff Miller has participated in more than 100
        leafleting campaigns in the City of Pittsburgh.   The

6

Pittsburgh Police have harassed him for exercising his First Amendment rights on two occasions. March 2, 2002 was the only time he was arrested in connection with his First Amendment activities.

25.     Plaintiff Woller has participated in approximately 50 leafleting campaigns in the City of Pittsburgh. He recalls one or two specific occasions, in addition to the March 2, 2002 incident, in which he observed other people being harassed by the Pittsburgh Police for exercising their First Amendment Rights. The March 2, 2002, incident was the only time that he was arrested in connection with his First Amendment activities.

26.     Plaintiff Gaffey has participated in approximately 20 leafleting campaigns in the City of Pittsburgh. March 2, 2002 was the only time that she was arrested or harassed while engaging in First Amendment activities.

27.     Plaintiff Mayle has participated in approximately 10 leafleting campaigns in the City of Pittsburgh. Other than the March 2, 2002 incident, he has never been arrested or harassed by Pittsburgh police officers while participating in such activities.

28.     Candace Zawoiski has leafleted on City sidewalks in connection with animal rights issues approximately 100 times. She has never been arrested for engaging in First

7

Amendment activities on public sidewalks in the City of
Pittsburgh.  She claims that Pittsburgh police officers
infringed her Constitutional rights on four occasions by
instructing her to move away from the entrance of a
business in order to continue her First Amendment
activity.  She describes any problems with Pittsburgh
police officers restricting her First Amendment rights on
City sidewalks as "sporadic" and "occasional", and
testified that while she believes that some Pittsburgh
police officers have infringed her rights, others have
affirmed her right to protest at her desired location.
She never reported any problems that she had with City of
Pittsburgh police officers allegedly restricting her
First Amendment rights on public sidewalks to City
officials.

29.     Carolyn Flamm has leafleted on City sidewalks in support
of animal rights on more than 15 occasions.  She has
never been arrested by the Pittsburgh Police for engaging
in First Amendment activities on public sidewalks.  She
testified that typically when picketing at Mellon Arena
she was told to either leave, stand still, or get a
permit.  She never personally reported any problems that
she had, or observed, with City of Pittsburgh police
officers allegedly restricting First Amendment rights on

public sidewalks to City officials.  Ms. Flamm has
reported some problems to the ACLU, which has represented
animal rights organizations in obtaining a consent decree
regarding permissible leafleting activity outside of
Mellon Arena.

30.     Peter McKoski has participated in leafleting or
protesting on City of Pittsburgh sidewalks for animal
rights on more than 40 occasions.  He has never been
arrested by City of Pittsburgh police officers for
engaging in those activities.  He believes that his
Constitutional rights were violated on approximately 10
occasions when he was instructed by City of Pittsburgh
police officers to move away from the entrance of a
building or business and/or not to block the sidewalk.
He never reported any problems that he had, or observed,
with City of Pittsburgh police officers allegedly
restricting First Amendment rights on public sidewalks to
City officials.

31.     Jonathan Leibowitz has participated in leafleting
activity in the City of Pittsburgh on more than one
occasion, including at PNC Park.  He has never been
arrested because he was engaging in First Amendment
activities on public sidewalks.  He once received a
citation under a littering ordinance while he was passing

9

out leaflets in front of a business in the Oakland section of Pittsburgh.

32. Leafleting goes on in the City of Pittsburgh daily. Organized protests occur about twice a week.

33. The manager of the Office of Municipal Investigations testified that he oversaw approximately 700 investigations in 2002 and 2003, none of which involved complaints regarding police misconduct in connection with citizens leafleting on City sidewalks.

34. All Pittsburgh Police Department representatives testifying at trial understood the First Amendment rights of citizens to protest and leaflet.

35. The City of Pittsburgh provides training to new officers, and on-going training to current officers, regarding Constitutional rights, including First Amendment rights. This training includes how to address issues related to the right of citizens to leaflet.

36. Training also consists of on the job observation.

37. More specifically, the Pittsburgh Police Department has distributed information to its officers regarding the First Amendment right to leaflet, and the consent decrees applicable to Mellon Arena and PNC Park events.

38. The Pittsburgh Police Intelligence Unit prepares awareness reports, sometimes with the assistance of

10

counsel, regarding upcoming events, and has distributed such reports on the issue of leafleting/protesting and First Amendment rights.

39.     Notices are posted at Pittsburgh Police Department headquarters regarding leafleting and protesting.

40.     The written policy of the Pittsburgh Police Department is to allow leafleting, so long as the person leafleting is not blocking the sidewalk or an entrance, interfering with pedestrian traffic, being disorderly, littering, harassing the public, or compromising public safety in any way.

41.     There is no evidence that a City policymaker was aware of a practice, custom, or persistent problem regarding individual officers preventing citizens from exercising their First Amendment right to leaflet on public sidewalks within the City of Pittsburgh.

42.     There was no evidence that there were such repeated, prevalent, permanent, or widespread incidents with police officers infringing on citizens' First Amendment rights to leaflet on public sidewalks in the City such that one could infer that the City knew of the problem and acquiesced in it.

11

II.      CONCLUSIONS OF LAW

         A.    Legal Authority

43.      A municipality is liable for an employee's violation of
         an individual's Constitutional rights under section 1983
         only when the "...execution of a government's policy or
         custom, whether made by its lawmakers or by those whose
         edicts or acts may fairly be said to represent official
         policy, inflicts the injury..."  Monell v. Dep't of Soc.
         Services of New York City, 436 U.S. 658, 694  (1978).

44.      There are two ways that a plaintiff can establish
         municipal liability under section 1983: policy or custom.

                  (a)  A plaintiff shows that a policy exists "when a
                  'decisionmaker  possess[ing]  final  authority  to
                  establish  municipal  policy  with  respect  to  the
                  action' issues an official proclamation, policy, or
                  edict."  Bielevicz v. Dubinon, 915 F.2d 845, 850
                  (3d  Cir.  1990)  (quoting  Andrews  v.  City  of
                  Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)).
                  (b)  A plaintiff establishes a custom, on the other
                  hand, "by showing that a given course of conduct,
                  although not specifically endorsed or authorized by
                  law, is so well-settled and permanent as virtually
                  to constitute law."  Id.   In other words, custom

                                      12

> may be established by proving knowledge of, and acquiescence to, a practice by a policymaker. <u>Fletcher v. O'Donnell,</u> 867 F.2d 791, 793-94 (3d Cir. 1989).

45.     Under either route, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or the acquiescence in a well-settled custom. <u>Bielevicz</u>, 915 F.2d at 850.

46.     It is clear that in order to establish municipal liability based on a custom, a plaintiff must show that a policymaker was aware of the unlawful conduct of its officers, but made a conscious decision not to address the problem. <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1042, 1064 (3d Cir. 1991).

47.     A municipality may be liable under section 1983 for failure to adequately train its police officers. <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 380 (1989). The inadequacy of police training may serve as the basis of section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. <u>Id</u>. at 388. To meet the deliberate indifference standard, the failure to train must reflect a conscious choice made by

13

city policymakers to not provide training that they know
is lacking and necessary. Id. at 389.

48.     Collecting signatures on petitions and distributing
        literature are rights protected by the First Amendment.
        Walker-Serrano ex rel. Walker v. Leonard, 325 F.3d 412,
        418 (3d Cir. 2003); Gregoire v. Centennial School Dist.,
        907 F.2d 1366, 1382 (3d Cir. 1990) (citing cases).

49.     Public places historically associated with the free
        exercise of expressive activities, such as streets,
        sidewalks, and parks, are considered, without more, to be
        public forums for First Amendment purposes. U.S. v.
        Grace, 461 U.S. 171, 177 (1983) (citing cases).

50.     It is axiomatic that the "Fourth Amendment prohibits
        arrests without probable cause." Berg v. County of
        Allegheny, 219 F.3d 261, 269 (3d Cir. 2000). In
        determining whether probable cause exists, a court must
        look to whether "...the facts and circumstances within
        the arresting officer's knowledge are sufficient in
        themselves to warrant a reasonable person to believe that
        an offense has been or is being committed by the person
        to be arrested." Merkle v. Upper Dublin School Dist.,
        211 F.3d 782, 788 (3d Cir. 2000).

14

51.     "The proper inquiry in a section 1983 claim based on
        false arrest ... is not whether the person arrested in
        fact committed the offense but whether the arresting
        officers had probable cause to believe the person
        arrested had committed the offense." <u>Dowling v. City of
        Philadelphia</u>, 855 F.2d 136, 141 (3d Cir. 1988).

52.     For there to be municipal liability under section 1983
        there must be a violation of plaintiff's Constitutional
        rights. <u>Collins v. City of Harker Heights, Texas</u>, 503
        U.S. 115, 122 (1992); <u>City of Los Angeles v. Heller</u>, 475
        U.S. 796, 799 (1986). This conclusion follows naturally
        from the principle that municipal liability will only lie
        where municipal action actually caused an injury.
        <u>Grazier ex rel. White v. City of Philadelphia</u>, 328 F.3d
        120, 124 (3d Cir. 2003).


        B.    <u>Legal Findings</u>

53.     Plaintiffs' First Amendment rights were not violated when
        they were told that they could not leaflet inside PNC
        Park.

54.     It is not a First Amendment violation for police officers
        to instruct individuals who are leafleting or protesting

                                15

that they cannot block business entrances or sidewalks,
or otherwise break the law.

55.      The official policy of the Pittsburgh Police Department
         is to allow leafleting, so long as the person leafleting
         is not blocking the sidewalk or an entrance, interfering
         with pedestrian traffic, being disorderly, littering,
         harassing the public, or compromising public safety in
         any way.

56.      There was no evidence, either direct or circumstantial,
         that the official policy of the Pittsburgh Police
         Department was to arrest or harass people who leaflet on
         public sidewalks.

57.      Plaintiffs did not establish that it was the custom of
         the Pittsburgh Police Department to arrest or harass
         people who leaflet on public sidewalks.

              (a)  There  was  no  evidence  that  the  alleged
                   practice of arresting or harassing people who
                   leaflet  on  public  sidewalks  was  so  well-
                   settled and permanent as to constitute law.
                   Instead, the evidence showed that problems
                   with individual officers instructing people
                   who  were  leafleting  that  they  must  leave,
                   move, or obtain a permit in violation of their

16

First Amendment rights occurred rarely. According to plaintiffs' own witnesses, such problems occurred approximately 15-20 times over a period of ten years. Given that leafleting occurs in the City of Pittsburgh on a daily basis, no well-settled and permanent custom can be inferred from these few instances in which problems occurred.

(b) There was no evidence that a policymaker was aware of any alleged practice of arresting or harassing people who leaflet on public sidewalks. Instead, the evidence showed that only a few incidents in which officers instructed people who were leafleting that they must leave, move, or obtain a permit in violation of their First Amendment rights were ever reported to City officials. These few reports came through the ACLU, and resulted in consent decrees. There was no evidence that City officials were somehow otherwise aware of any alleged pattern or practice of First Amendment violations by its officers. Having been unaware of any problem, the policymakers

17

could not have made a conscious decision to not address it in violation of the law.

58.     Plaintiffs failed to prove that there is a lack of training of Pittsburgh police officers on First Amendment rights that rises to the level of deliberate indifference. There was no evidence that any policymaker made a conscious choice to ignore the need for training in this area of the law. Instead, the evidence showed that the Pittsburgh Police Department provides formal training on First Amendment rights, as well as on the job training in that area. More specifically, the Department provides reports, updates, and detailed instructions regarding the First Amendment right of citizens to leaflet and protest on an as needed basis.

59.     At the time of plaintiffs' arrest, the arresting officers knew that a Pirates' employee had been given one of plaintiffs' leaflets by a plaintiff while plaintiffs were inside PNC Park, after plaintiffs had been warned not to leaflet on private property belonging to the Pirates.

60.     A reasonable person with knowledge of those facts would believe that plaintiffs were leafleting on Pirates' private property after being warned not to do so.

18

61.     The arresting officers had probable cause to believe that
        plaintiffs had committed the offense of defiant trespass.

62.     Because plaintiffs' Fourth Amendment rights were not
        violated, their section 1983 claim based thereon must
        fail.

        Accordingly, this 3rd day of April, 2007, IT IS HEREBY
ORDERED that judgment is entered in favor of defendant.

                                    BY THE COURT:

                                    _____, J.

cc:     All Counsel of Record

                                    19